1

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
EASTERN DIVISION


- - - - - - - - - - - - X
UNITED STATES OF AMERICA, :
                          :
      Plaintiff,          :
                          :
vs.                       :        Case No. 3:19-cr-57
                          :
ANTHONY DAVID COLLINS,    :   SENTENCING HEARING TRANSCRIPT
                          :
      Defendant.          :
- - - - - - - - - - - - X


                              Courtroom 242, Second Floor
                              U.S. Courthouse
                              131 East Fourth Street
                              Davenport, Iowa
                              Tuesday, December 22, 2020
                              11:34 a.m.

BEFORE:  THE HONORABLE JOHN A. JARVEY, Chief Judge


APPEARANCES:

For the Plaintiff:        ANDREA L. GLASGOW, ESQ.
                          United States Attorney's Office
                          131 East Fourth Street, Suite 310
                          Davenport, Iowa  52801


For the Defendant:        DIANE HELPHREY, ESQ.
                          Federal Public Defender's Office
                          101 West Second Street, Suite 401
                          Davenport, Iowa  52801-1815


                TONYA R. GERKE, CSR, RMR, CRR
                  United States Courthouse
              123 East Walnut Street, Room 197
                  Des Moines, Iowa 50309

2

1                        P R O C E E D I N G S

2              THE COURT:  Please be seated.  We're here in the

3    matter of United States versus Anthony Collins, Case 3:19-cr-57.

4    He is before the Court for sentencing.  He pled guilty on

5    October 16th of last year to Counts 1, 2, and 3 of the July 9th,

6    2019, indictment.  He's present.  He's represented by Diane

7    Helphrey, and the Government's represented by Andrea Glasgow.

8              In preparation for sentencing, I have reviewed the

9    presence report in its entirety.  I've received and reviewed

10   the sentencing memoranda filed by the Government and

11   Mr. Collins.  There were letters to include one I received this

12   morning as well as the psychology interest report from

13   Dr. Lodico and Dr. Ogden -- Ogden.  Sorry.

14             So, Ms. Helphrey, you've had a chance to review the

15   presentence report with him?

16             MS. HELPHREY:  Yes, Your Honor.

17             THE COURT:  Did you find factual errors in the report?

18             MS. HELPHREY:  No, Your Honor.

19             THE COURT:  Did you find factual errors in it,

20   Ms. Glasgow?

21             MS. GLASGOW:  No, Your Honor.

22             THE COURT:  I find that the presentence report is

23   factually accurate as to all matters.

24             You have two issues or one with respect to the

25   sentencing guidelines, Ms. Helphrey?  There's been identified as

1  issues the difference between ice or methamphetamine mixture and

2  then the gun enhancement.

3         MS. HELPHREY:  The only remaining issue is the gun

4  enhancement.

5         THE COURT:  Do you want to make brief argument on

6  that?

7         MS. HELPHREY:  Sure, Your Honor.  Most of the facts

8  are outlined in the -- or the facts are outlined in the

9  presentence report.  I would just like to highlight that the gun

10  was located in a separate area obviously from the controlled

11  substances.  They were recovered from the kitchen cupboard of

12  the home.  The gun was in the bedroom closet of the home.  The

13  controlled purchases were not facilitated with the use of any

14  sort of firearm, so it's based on the disconnection between the

15  firearm from any sort of drug activity.

16         THE COURT:  Ms. Glasgow?

17         MS. GLASGOW:  Thank you, Your Honor.  I'll stand on

18  the arguments made in my sentencing memorandum.  I think this is

19  still sufficient that the gun should apply.

20         THE COURT:  I find in favor of the Government.  The

21  facts in the presentence report show that it's not clearly

22  improbable that the gun was associated with drug trafficking.

23         He has a total offense level of 33 and a criminal

24  history category of III, which would suggest a range of

25  imprisonment between 168 and 210 months.  I'd hear first from

4

1  you, Ms. Helphrey, and then from your client, and then from

2  Ms. Glasgow before imposing sentence.

3          MS. HELPHREY:  Thank you, Your Honor.  We are asking,

4  as the written submission suggests, for the consideration of a

5  downward variance in this case.  It's based on a number of

6  factors.

7          As the Court can see from reading the history of

8  Mr. Collins, his involvement in this offense involved the

9  progression of his own addiction, and it was addiction driven,

10 and his addiction, you can see, is part of a larger context of

11 struggles that Mr. Collins had early in his life.  His use of

12 meth started at age 21, so in his early 20s, but he was exposed

13 to other substances at a much earlier age, even alcohol through

14 his father at the age of 8 and marijuana at the age of 12.  So

15 his use started at an age before clearly he could understand the

16 significance of some of those choices, and it became normalized

17 at an age before he could understand the significance of some of

18 those choices.

19         I also provided to the Court an assessment of

20 intellectual functioning that was provided, which is somewhat

21 unusual, so I would like to explain that.  We did that because

22 in the presentence report it refers to an unidentified learning

23 disability, but it's a significant part of Mr. Collins' life.

24 It's not just what we might see someone struggling in a certain

25 area academically.  He has a very low full-range IQ score.  He's

1   functioning at -- so the full-range IQ is a 51.  He's described

2   as very low functioning intellectually, and, in fact, he

3   functions academically at a first-grade or a second-grade level

4   based on some of the testing that they did as well.  So as a

5   practical matter, when he's talking about and his brother's

6   letter independently talking about the struggles that he had

7   getting -- sustaining employment and getting out on his own,

8   it's a real problem.  It's not something that's just based on

9   his lack of desire to do that.

10          And when he talks about depression -- and there's some

11  suicidal ideation early in his life, some self-harming in his

12  teenage years -- when he's talking about that low self-worth,

13  it's based not only on the learning disability, but that plays

14  into it, but also on his personal history, and so when he's

15  talking about medicating depression, that might be something we

16  hear on a lower level more commonly, but it's very significant

17  for him.

18          And I want to go back from the learning disability to

19  his early life, because no one really paid enough attention to

20  it because his family had too many other problems going on to

21  ever do that.  Both of his parents suffered from addiction.  His

22  father was very violent.  He would beat physically his mother in

23  front of the children.  He was physical against the siblings as

24  well, and there's verbal insults that were common throughout the

25  home.  His father was very much the victim of his own addiction

1  and actually died at the age of 46 with alcohol-related

2  complications.  So the home life that Mr. Collins was raised in

3  was chaotic, to say the least.

4        His one beacon of light in that early life was

5  basketball because he was very talented with basketball and he

6  had some talent, and he had a coach that he still talks very

7  fondly about that was mentioned in the presentence report that

8  was the first real positive mentor that he had in his life, who

9  helped him pay for things that he needed to keep being part of

10  the team and tried to encourage him with school as much as he

11  could so he could be part of the team, but ultimately he

12  couldn't keep up academically and keep his grades up, and then

13  with what was going on at home, he ended up ending his school --

14  terminating school, and then that terminated that positive

15  outlet in his life.

16        But with the problem between his parents at the age

17  of -- well, late teens; I don't know specifically; 16, 17 -- he

18  started to intervene and tried to stop his father from

19  physically attacking his mother.  He tried to talk his mother

20  into leaving.  Eventually he left at 17, but he wasn't really

21  prepared to take care of himself based on all of the other needs

22  he had himself.

23        He left to Burlington because he had a cousin that

24  lived in Burlington, and that was really the only support that

25  was available to him at that time or the best opportunity he saw

1  to get away.  Even in his younger years, he had run away a

2  couple of times as a child just to get out of that environment.

3  So his entrance into use and addiction certainly happened within

4  a very complicated set of circumstances, and then that escalated

5  into the current offense where he was sustaining his own

6  addiction with his activities that resulted in the current

7  charges.

8          But on the counter side of that, you have letters from

9  family.  His brother, his mother, the mother of his children all

10  say that it's not characteristic of him, and that is

11  corroborated when you look at his criminal history.  It's not

12  characteristic of him.  He has possessions of marijuana, but he

13  doesn't have sales in his history.  He has served up to 10 days

14  in jail in the past, which is a unique circumstance for someone

15  facing the guideline he has.  So when they're saying it's not

16  characteristic, it's borne out by the record, and they talk

17  about how determined he was to provide a different life for his

18  own family than what he endured, and the mother of his child

19  talks about how he's a critical parent, co-parent with her.  His

20  family talks about how they've seen him be involved with his

21  children very directly and parenting, despite the issues that he

22  had.  So there's certainly glimmers of him wanting the things

23  that he says he wants.

24          In the presentence report, he talks about wanting

25  vocational training, and he wants to learn a skill -- like a

1  hands-on skill where he can take the time to learn it and then

2  he has the ability to be employed with that skill.  So that's

3  something that he desires, and the fact that he's held other

4  jobs -- low-skilled jobs in the past also shows that there's a

5  real desire there for it.

6          So I feel that Mr. Collins presents as someone that

7  has been struggling without the idea of how to fix a lot of

8  different issues in his life, and I think this system can

9  provide him structure and the ability to rehabilitate, but I

10 don't think the length of sentence that he's facing is necessary

11 to do that.  He will be on supervised release.  It's probably

12 more valuable to him than many people.  It's valuable, but I'm

13 saying he particularly needs that help to find the resources

14 that he needs to link to to deal with some of the issues he's

15 had all of his life.

16         So for those reasons, we are asking the Court to

17 consider a variance.  There is still the consequences, as the

18 Court is well aware, on supervision that's hanging over his

19 head.  I think earlier release of supervision where he can start

20 building the life that he wants to achieve is better for both

21 his rehabilitation but also the community where he gets out and

22 is a productive contributor.

23         THE COURT:  Mr. Collins, is there something you'd like

24 to say?

25         THE DEFENDANT:  Yes.

1          THE COURT:  Go ahead.

2          THE DEFENDANT:  Well, I've been locked up in Muscatine

3  for a year and seven months, and it's been the hardest time of

4  my life.  I'm away from my family and my kids.  You know, they

5  doing it -- she's doing it all on her own without no help, so

6  it's kind of hard on me not being there to help and see my kids.

7  I'm missing out on birthdays and, you know, fellowship -- I'm

8  going to turn my life over to Christ.  I fellowship every

9  morning with guys in Muscatine, and, you know, we do a prayer

10 session every night, so I definitely learned -- took this as a

11 lesson that I learned from, and I just miss my family, missing

12 out on so much.

13         THE COURT:  Thank you.

14         THE DEFENDANT:  Thank you.  God bless you.

15         THE COURT:  Ms. Glasgow, why did it take so long to

16 get this one in for sentencing, do you know?

17         MS. GLASGOW:  I think it was one that was set in

18 March, and it was just taken off the schedule and not reset.

19         THE COURT:  Okay.

20         MS. GLASGOW:  Your Honor, this case involves

21 distribution of methamphetamine over a period of time and the

22 possession of a firearm related to those activities.  The

23 defendant is 29 with criminal history dating back to when he was

24 17.  He does have some history of violence, which makes his

25 possession of a gun under these circumstances further

1  aggravating, as does the fact that he was on supervision at the

2  time of this offense.

3        THE COURT:  In fashioning an appropriate sentence, I

4  have considered each of the factors found in Title 18, United

5  States Code section 3553(a), which means I have considered the

6  nature and circumstances of these offenses as well as the

7  history and characteristics of Mr. Collins.  I have considered

8  the seriousness of the offense.  In doing so, I looked at the

9  magnitude of this methamphetamine activity.  I've considered

10 your role in it.  I've considered the extent to which your

11 participation was addiction driven.

12       I'm concerned about the presence of a firearm for the

13 exact same reason that Ms. Glasgow identified, in that there

14 is -- you have convictions for violence in your past, that in

15 addition to the Court's other obvious concern about the

16 combination of drugs and guns.

17       I have considered his mental ability, his childhood

18 together with the other struggles that would be serious

19 impediments for anyone.

20       I've considered the difference between the guidelines

21 as it relates to ice methamphetamine and methamphetamine

22 mixtures.  I've considered the question of just punishment, the

23 need for adequate deterrence to criminal conduct, the need to

24 protect the public from further crimes, the need to promote

25 respect for the law, and I've looked to the sentencing

1  guidelines as an important, though not in any way controlling,

2  factor to be considered.  Finally, I have weighed heavily the

3  need to avoid unwarranted sentencing disparity among defendants

4  with similar records who have been found guilty of similar

5  conduct.

6          After considering all of the arguments of counsel,

7  oral and written, the Court concludes that the following

8  sentence is sufficient, but not greater than necessary, to

9  address the essential sentencing considerations.  It is the

10 judgment of the Court that Anthony David Collins is sentenced to

11 the custody of the Bureau of Prisons for 144 months on each of

12 Counts 1, 2, and 3, those terms to run concurrent, meaning at

13 the same time.

14         Upon release from prison, you'll be placed on

15 supervised release for 5 years on each count, those terms to run

16 concurrent.  Within 72 hours of release from the Bureau of

17 Prisons, you shall report in person to the probation office in

18 the district where you are released.  While on supervised

19 release, you shall not commit another federal, state, or local

20 crime; you shall not possess a firearm or destructive device;

21 you shall not illegally possess a controlled substance.  You

22 shall comply with the standard conditions of supervision as

23 adopted by the sentencing commission plus the special conditions

24 found in your presentence report at paragraphs 127 to 131.

25         Did you object to any of those?

1          MS. HELPHREY:  No, Your Honor.

2          THE COURT:  I find that you do not have the ability to

3  pay a fine.  That is waived.  You're ordered to pay a $300

4  special assessment.  It's due and payable immediately without

5  interest to the clerk of court.

6          You have the right to take an immediate appeal from

7  this judgment.  Any appeal has to be filed within 14 days from

8  today.

9          Is there forfeiture here?

10         MS. GLASGOW:  No, Your Honor.

11         THE COURT:  Did you want me to make a recommendation

12  as to where he's incarcerated?

13         MS. HELPHREY:  I'm sorry, Your Honor.  He's changed

14  what we talked about, so I just want to --

15         THE COURT:  Take your time.

16         MS. HELPHREY:  Your Honor, he is requesting placement

17  at either Thompson or Oxford.

18         THE COURT:  Why?

19         MS. HELPHREY:  Based on the proximity as well as

20  programming, Your Honor.

21         THE COURT:  I make those recommendations.

22         MS. HELPHREY:  Your Honor, I'd also ask that

23  Mr. Collins be recommended for the RDAP program.

24         THE COURT:  I make that recommendation.

25         Anything else, Ms. Glasgow?

13

1          MS. GLASGOW:  No, Your Honor.

2          THE COURT:  We're in recess.

3          (Proceedings concluded at 11:51 a.m.)

4                    C E R T I F I C A T E

5          I, Tonya R. Gerke, a Certified Shorthand Reporter of

6    the State of Iowa and Federal Official Realtime Court Reporter

7    in and for the United States District Court for the Southern

8    District of Iowa, do hereby certify, pursuant to Title 28,

9    U.S.C. Section 753, that the foregoing is a true and correct

10   transcript of the stenographically reported proceedings held in

11   the above-entitled matter and that the transcript page format is

12   in conformance with the regulations of the Judicial Conference

13   of the United States.

14          Dated at Des Moines, Iowa, January 21, 2021.

15

16

17                    /s/ Tonya R. Gerke
                      Tonya R. Gerke, CSR, RMR, CRR
18                    Federal Official Court Reporter

19

20

21

22

23

24

25